IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF NEW JERSEY
CAMDEN VICINAGE

| | | |
|---|---|---|
| UNITED STATES OF AMERICA, | : | |
| Plaintiff, | : | Crim. No. 19-99 (RBK) |
| v. | : | **OPINION** |
| MITCHELL BLEICHER, | : | |
| Defendant. | : | |

**KUGLER**, United States District Judge:

This matter comes before the Court upon Defendant Mitchell Bleicher's Motion for Reduction of Sentence (Doc. 20 ("Def. Mot.")). Defendant is presently incarcerated at U.S. Penitentiary Lewisburg Camp ("Lewisburg"), and seeks release based on danger posed by the present COVID-19 pandemic. (Def. Mot at 1.) The Government opposes this motion, arguing that Defendant has not made the required showing for a sentence reduction. (Doc. 22 ("Govt. Resp.").) For the reasons expressed herein, Defendant's motion (Doc. 20) is DENIED.

**I.    BACKGROUND**

Since at least as early as 2009, Defendant owned and operated Allied Materials Incorporated, a janitorial supply company that sold items such as light bulbs, paper towels, and hand soaps. (Doc. 9 at 26.) In 2009, Defendant created a scheme to defraud one of Allied's customers by submitting false invoices for products that were not delivered. (*Id.* at 27.) In furtherance of this scheme, Defendant convinced several individual employees to approve the false invoices, paying them with cash or expensive gifts. (*Id.*) With the proceeds from this scheme, Defendant bought personal assets such as Rolex watches, firearms, jewelry, multiple Rolls Royce

1

automobiles and other cars for his family, he renovated his home, and paid for his daughters' college tuition. (*Id.* at 32.) When filing his income tax returns from 2011 to 2017, Defendant omitted all of the money he embezzled through this scheme. (*Id.* at 33.)

On February 8, 2019, Defendant pleaded guilty to one count of wire fraud, one count of money laundering, and one count of income tax evasion. (Doc. 9.) The three counts carried a maximum of 35 years of imprisonment. (*Id.* at 3.) On July 17, 2019, this Court sentenced Defendant to imprisonment for 50 months on each of the three counts, to be served concurrently, and 3 years of supervised release on each count, also to be served concurrently. (Doc. 16.) Defendant was ordered to surrender to the Bureau of Prisons on or after September 2, 2019. (Doc. 19 at 31.)

Defendant now asks this Court to reduce his sentence, arguing that confinement at Lewisburg places him at exceptionally high risk of contracting COVID-19.

## II.    LEGAL STANDARD

"The recently enacted First Step Act allows a defendant to be afforded compassionate release for 'extraordinary and compelling reasons.'" *United States v. Sellers*, Crim. No. 10-434, 2020 WL 1972862, at *1 (D.N.J. Apr. 24, 2020) (quoting 18 U.S.C. § 3582(C)(1)(A)(i)). Before bringing a motion for reduced sentence on their own behalf, defendants first "must ask the Bureau of Prisons ("BOP") to do so on their behalf, give BOP thirty days to respond, and exhaust any available administrative appeals." *United States v. Raia*, Civ. No. 20-1033, 2020 WL 1647922, at *1 (3d Cir. Apr. 2, 2020) (citing § 3582(c)(1)(A)). "Thus, under the First Step Act, a defendant seeking a reduction in his term of imprisonment bears the burden of satisfying both that he has (1) exhausted remedies before seeking judicial review, and (2) that compelling and extraordinary

reasons exist to justify compassionate release." *Sellers,* 2020 WL 1972862 at *1 (citing 18 U.S.C. § 3582(C)(1)(A)).

At this second step, a court may reduce an inmate's sentence pursuant to 18 U.S.C. § 3852(c)(1)(A) "if the court finds that (1) extraordinary and compelling reasons warrant a reduction, (2) the reduction would be consistent with applicable policy statements issued by the Sentencing Commission, and (3) the applicable sentencing factors under § 3553(a) warrant a reduction." *United States v. Pabon*, Crim. No. 17-165-1, 2020 WL 2112265, at *2 (E.D. Pa. May 4, 2020).

### III. DISCUSSION[1]

Both parties agree that Defendant has satisfied the exhaustion requirement, and is thus permitted to bring a motion for reduced sentence in this Court.[2] Thus, the Court focuses on the second step of the analysis.

#### A. Whether extraordinary and compelling reasons exist

Defendant asserts that extraordinary and compelling reasons warrant a reduction in his sentence, arguing that: 1) being housed in Lewisburg presents an exceptional risk of contracting COVID-19, and 2) Defendant in particular is at high risk of severe illness if he were to contract COVID-19 due to his underlying medical issues. (Def. Mot. at 1.) The Government argues in response that a general risk of contracting COVID-19 does not meet the "extraordinary and compelling" standard, and that Defendant's particular medical conditions do not rise to the necessary "high risk" level. (Govt. Resp. at 8–12.)

---

[1] The Court notes that Defendant's motion seems to request that his sentence be modified to home confinement. The Government argues that this Court does not have the authority to direct the BOP to place Defendant in home confinement. (Govt. Resp. at 13.) This argument need not be addressed, however, as Defendant's Reply Brief clarifies that he is seeking an actual reduction of his sentence, and it is his term of supervised release that he suggests he serve in home confinement. (Doc. 23 ("Def. Reply") at 23.)

[2] A letter from the BOP reflects that Defendant's request was denied on April 8, 2020. (Doc. 22-2.)

3

In arguing that the risk of COVID-19 is particularly severe at Lewisburg, Defendant notes that 2,066 federal inmates and 359 BOP staff have tested positive for COVID-19 nationwide. (Def. Br. at 6.) He uses these aggregate statistics to argue that prisons in general are conducive to the rapid spread of COVID-19. (*Id.*) He argues that Lewisburg specifically is susceptible because inmates are not wearing masks or forced to remain six feet apart at all times. (*Id*. at 9–10.) He argues that the Court should not wait until Lewisburg reports its first inmate COVID-19 case, and should instead take a proactive approach. (*Id*.)

While the Court does not seek to undermine the seriousness of this pandemic, Defendant's argument that the existence of COVID-19 at Lewisburg is "extraordinary and compelling" is unpersuasive. The Third Circuit recently addressed the issue of COVID-19 as it pertains to prison populations, stating that the "mere existence of COVID-19 in society and the possibility that it may spread to a particular prison alone cannot independently justify compassionate release." *United States v. Raia*, Civ. No. 20-1033, 2020 WL 1647922, at *2 (3d Cir. Apr. 2, 2020). Further, the statistics Defendant cites in support of release reflect *nationwide* COVID-19 inmate cases, rather than existing conditions at Lewisburg. (Def. Br. at 6.) At Lewisburg, one staff member has tested positive for COVID-19, and no inmates have tested positive. (Gov. Resp. at 5–6.)

Standing alone, Defendant's assertion that COVID-19 might, at some point, spread further at Lewisburg is insufficient to show "extraordinary and compelling reasons" for release. *See United States v. Stevens*, Crim. No. 19-350-02, 2020 WL 1888968, at *4 (E.D. Pa. Apr. 16, 2020) ("Although the Court is aware of the dangers posed by COVID-19 and is sympathetic to [Defendant's] concern about COVID-19 given his diabetes, speculation about possible future conditions at the FDC does not constitute an exceptional reason for release.") (collecting cases); *United States v. Haney*, Crim. No. 19-541, 2020 WL 1821988 at *5 (S.D.N.Y. Apr. 13, 2020)

4

(denying a 61-year-old defendant's request for early release, stating that although the prison has several confirmed cases of COVID-19, "there is no meaningful counter-evidence suggesting that the COVID-19 virus is rapidly spreading in the [prison]"); *United States v. Sellers*, Crim. No. 10-434, 2020 WL 1972862 at *2 (D.N.J. Apr. 24, 2020) (finding "the measures instituted by the BOP to be reasonable to address the virus outbreak" at a federal prison in New York even though several inmates had tested positive).

Defendant does go a step beyond arguing the risks of COVID-19 generally by also arguing that his health conditions make him particularly vulnerable to the virus: he is obese, has high blood pressure,[3] and reports a history of upper respiratory issues. (Def. Mot. at 1.) Defendant is six foot three inches tall and weighs 302 pounds, placing his BMI at 37.7. (*Id*. at 12.) As for respiratory issues, Defendant states that he was treated on an outpatient basis for pneumonia in 2017, and that he "may be susceptible to getting pneumonia again." (Doc. 20-5 at 2.)

In response, the Government argues that none of Defendant's health conditions place him at significantly greater risk of COVID-19. (Govt. Resp. at 8–11.) It asserts that none of Defendant's medical records report him having high blood pressure, that Defendant's obesity is not "severe" as defined by the Centers for Disease Control and Prevention ("CDC"), that Defendant has not had any post-pneumonia respiratory issues, and Defendant is overall in good health. (*Id*. at 10–11.)

According to guidance released by the CDC, certain categories of individuals face a higher risk from COVID-19.[4] These include "older adults"—defined as "65 years and older"—and "people of any age who have serious underlying medical conditions." *Id.* The serious medical conditions referenced include: chronic lung disease, asthma, serious heart conditions,

---

[3] Defendant states that he has high blood pressure, but does not go into any specific details or explain the severity of his particular condition in his briefing.

[4] *People Who Are at Higher Risk for Severe Illness*, CENTERS FOR DISEASE CONTROL AND PREVENTION (Apr. 15, 2020), https://www.cdc.gov/coronavirus/2019-ncov/need-extra-precautions/people-at-higher-risk.html.

5

immunocompromising conditions, severe obesity, diabetes, chronic kidney disease, and liver disease.

Defendant does not assert that he had any specific respiratory condition other than pneumonia in 2017; as such, he does not fall into any of the "severe" respiratory issue categories. Further, general high blood pressure does not constitute a high-risk category. Finally, Defendant's BMI of 37.7 does not rise to a "severe" level of obesity as defined by the CDC.[5]

Because Defendant's health does not place him at significantly greater risk of complications from COVID-19, he does not meet the required "extraordinary and compelling" standard for reduction of his sentence. *See United States v. Epstein*, Crim. No. 14-287-1, 2020 WL 2537648 (D.N.J. May 19, 2020) (denying an inmate's motion for sentence reduction after finding that his health conditions were under control while in prison).

### B. § 3553(a) factors

An analysis of the § 3553(a) factors further supports the denial of Defendant's request for sentence reduction. In considering whether to reduce a defendant's sentence, a court must look to the factors contained in 18 U.S.C. § 3553(a). These factors include:

> (1) the nature and circumstances of the offense and the history and characteristics of the defendant;
> (2) the need for the sentence imposed—
> > (A) to reflect the seriousness of the offense, to promote respect for the law, and to provide just punishment for the offense;
> > (B) to afford adequate deterrence to criminal conduct;
> > (C) to protect the public from further crimes of the defendant; and
> > (D) to provide the defendant with needed educational or vocational training, medical care, or other correctional treatment in the most effective manner

18 U.S.C. § 3553(a).

---

[5] According to the CDC, "[s]evere obesity, defined as a body mass index (BMI) of 40 or above, puts people at higher risk for complications from COVID-19." *Groups at Higher Risk for Severe Illness*, CENTERS FOR DISEASE CONTROL AND PREVENTION (May 14, 2020), https://www.cdc.gov/coronavirus/2019-ncov/need-extra-precautions/groups-at-higher-risk.html.

At Defendant's sentencing hearing, this Court stressed the seriousness of Defendant's crimes, noting that these crimes were committed over a ten-year period and involved regular, consistent choices by Defendant in order to maintain the commission of his crimes. The Court also noted the sheer amount of money that Defendant obtained from his crimes. Based on the circumstances, the Court stressed the need for a significant sentence for general deterrence purposes. However, finding that Defendant had expressed genuine remorse, the Court granted a downward variance in sentencing Defendant to a total of 50 months of imprisonment.

Defendant now requests a reduced sentence, despite only serving 8 months out of the 50 months of imprisonment ordered. In sentencing Defendant to 50 months of imprisonment, the Court has already departed downward from the guideline range. Although the Court, as mentioned at Defendant's sentencing hearing, cannot conclude that Defendant would commit further crimes, allowing Defendant's sentence to now be cut down to 8 months would be sharply in contravention of § 3553(a)(2). Reducing Defendant's sentence to such a relatively short time period would certainly fail to "reflect the seriousness of the offense," "promote respect for the law," "provide just punishment for the offense," or "afford adequate deterrence to criminal conduct." 18 U.S.C. § 3553(a)(2). Thus, based on the totality of Defendant's actions, this Court finds that the § 3553(a) factors weigh against granting Defendant's motion for a reduced sentence.

### IV.   CONCLUSION

For the above reasons, Defendant's Motion for Reduction of Sentence (Doc. 20) is hereby DENIED. An accompanying Order shall issue.

Dated: 5/27/2020

s/ Robert B. Kugler
ROBERT B. KUGLER
United States District Judge